IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICE PLUMBERS AND PIPEFITTERS OF THE UNITED STATES AND CANADA, LOCAL 74, | ) ) ) ) ) ) ) |  |
| Plaintiff | ) ) |  |
| v. | ) ) | C.A. No. 12-1060-GMS-SRF |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 313, | ) ) ) ) |  |
| Defendant. | ) ) |  |

## **MEMORANDUM**

### I.  **INTRODUCTION**

Pending before the court are: (1) the cross-motions for summary judgment filed by plaintiff United Association of Journeymen and Apprentice Plumbers and Pipefitters of the United States and Canada, Local 74 ("Local 74") and defendant International Brotherhood of Electrical Workers, Local 313 ("Local 313") (D.I. 27, 36); (2) Local 74's motion to strike (D.I. 41); (3) Local 313's cross-motion for leave to supplement the record (D.I. 42); (4) Magistrate Judge Fallon's Report and Recommendation ("the R&R"), dated January 27, 2015 (D.I. 45); and the Objections filed by Local 313 on February 23, 2015. (D.I. 48.) For the reasons below, the court will sustain Local 313's objections and reject the R&R. Thus, the court will deny Local 74's motion for summary judgment and grant Local 313's motion for summary judgment. The motion to strike and motion for leave to supplement the record are denied as moot.

### II.  **OBJECTIONS**

Magistrate Judge Fallon found that the terms of the collective bargaining agreement

("CBA")—which, among other things, outlines the procedures for deducting money from employees' paychecks as payment of membership dues for both Local 74 and Local 313—were ambiguous. (D.I. 45 at 10.) Specifically, Magistrate Judge Fallon stated:

> Whereas §§ 7(1) and 10(a) of the CBA suggest that members of Local 74 need only remit dues to their own union, § 10(e) could be construed to require all employees, regardless of whether they are associated with Local 74 or Local 313, to remit dues to Local 313 as compensation for its role as the exclusive collective bargaining representative. Therefore, the terms of the CBA are ambiguous . . . .

(*Id.*) Ultimately, the magistrate judge determined that the CBA did not permit Local 313 to draw from Local 74 employees' wages; the money was to be forwarded in its entirety to Local 74. Magistrate Judge Fallon found that the extrinsic evidence supported this view.

Local 313 objects to the magistrate judge's conclusions in the R&R. Local 313 maintains that the CBA is clear and unambiguous—pursuant to the terms, Local 313 was entitled to a portion of Local 74's dues, as compensation for its role as the exclusive bargaining representative. (D.I. 48 at 2–3.) Moreover, Local 313 argues that the magistrate judge's construction is at odds with Congress's statutory scheme permitting the use of "agency shop" or "union security" clauses; indeed, Local 313 maintains that the construction nullifies such a provision in the CBA entirely. (*Id.* at 3–8.) Local 313 also contends that the language of "dues authorization cards" is inconsistent and should not have factored into the magistrate judge's analysis. (*Id.* at 8–9.) Finally, Local 313 argues that Local 74 failed to exhaust all of its remedies, outlined in the AFL-CIO Constitution. (*Id.* at 9–10.)

## III. STANDARD OF REVIEW

The magistrate judge submitted her R&R pursuant to Rule 72(b)(1) of the Federal Rules of Civil Procedure; the pending objections, therefore, are dispositive and the court's review is *de*

*novo.* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). The court may accept, reject, or modify the recommendations of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The court also may receive further evidence or return the matter to the magistrate judge with instructions for further proceedings. *Id.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d at 393. A fact is material only if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.*

In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.* In determining the appropriateness of summary judgment, a court must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, [but] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party is also entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing or adduce evidence on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Appelmans v.*

3

*City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). "The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party." *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).

## IV. DISCUSSION

After having reviewed the record in this case, the R&R, the parties' submissions, and the applicable law, the court finds that Magistrate Judge Fallon's conclusions of law were improper. The court therefore rejects the R&R.

In the R&R, Magistrate Judge Fallon determined that the CBA was ambiguous, focusing on several provisions of the CBA that appeared to create "two reasonable alternative interpretations." (D.I. 45 at 7.) On the one hand, § 10(e)—the agency shop clause—requires that "[a]ll employees covered by this agreement shall as a condition of continued employment, pay to the employee's exclusive collective bargaining representative an amount of money equal to that paid by other employees in the bargaining unit who are members of the Union." (D.I. 29, Ex. B, § 10(e) ("CBA").) Local 313 is undisputedly the exclusive collective bargaining representative, and therefore Local 313 argues it was entitled to retain dues. On the other hand, § 7(1) states that all employees must become members of "the Union"—*i.e.*, Local 313—as a condition of employment, but an employee's membership in Local 74 suffices as a stand-in for membership in the Union. (*Id.* § 7(1).) Moreover, § 10(a) states:

> The Company [employer] hereby agrees to checkoff from wages of any employee employed by the Company under the agreement

4

dues and/or assessments in the amount specified in the Union's Bylaws. (For the purpose of this provision, the Bylaws of Plumbers & Pipefitters Local 74 shall apply with respect to any of its members employed under this agreement) and remit said amount to the Union.

(*Id.* § 10(a).) According to the magistrate, "§§ 7(1) and 10(a) of the CBA suggest that members of Local 74 need only remit dues to their own union." (D.I. 45 at 10.)

As an initial matter, the court finds error in the magistrate judge's procedure. In their cross-motions, both Local 313 and Local 74 asserted that the language of the CBA was unambiguous, and therefore, in their view, the dispute could be resolved at summary judgment. *See Sheet Metal Workers, Local 19 v. 2300 Grp., Inc.*, 949 F.2d 1274, 1284 (3d Cir. 1991) ("It is the role of the court to interpret a written contract when the terms and surrounding circumstances are unambiguous." (internal quotation marks omitted)); *Cordis Corp. v. Bos. Scientific Corp.*, 868 F. Supp. 2d 342, 351–52 (D. Del. 2012), *aff'd in part, vacated in part*, 504 F. App'x 922 (Fed. Cir. 2013) ("Construction of contract language is a question of law.... Contractual language is not rendered ambiguous simply because the parties do not agree upon its proper construction." (internal quotation marks omitted)).[1] The magistrate judge found, however, that the CBA was indeed ambiguous. *See Cordis*, 868 F. Supp. 2d at 352 ("[I]nconsistent contractual provisions may create ambiguity in a contract."). "When a contract is ambiguous, it raises factual issues requiring consideration of extrinsic evidence to determine the intended meaning of the provision in light of the expectations of the contracting parties." *Id.* Only where the extrinsic evidence is uncontested will "the interpretation of the contract remain[] a question of

---

[1] The court frequently references general rules of contract law, recognizing that collective bargaining agreements are not always analyzed the same way as other contracts. *See Sheet Metal Workers*, 949 F.2d at 1284 ("Federal law governs the interpretation of a collective bargaining agreement. Although a collective bargaining agreement differs from an ordinary contract, the meaning of a collective bargaining agreement may be determined by applying general rules of state contract law as long as federal labor law does not provide a conflicting rule." (internal quotation marks, citations, and alteration omitted)).

5

law for the court to decide." *Id.* The extrinsic evidence here—the prior course of conduct, the dues authorization cards, the underlying motivations for Local 313's change in behavior—is in dispute. It was therefore improper for the magistrate judge, having found the CBA to be ambiguous, to resolve the dispute as a matter of law. *See Boyle*, 139 F.3d at 393 ("[A]t the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."); *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("[W]here reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence. In those cases, summary judgment is improper." (internal footnote omitted)).

More important, however, the court disagrees with the magistrate judge's interpretation of the CBA provisions. As stated in the R&R, "a collective bargaining agreement's terms should be given a reasonable construction, and 'must be construed so as to render none nugatory and avoid illusory promises.'" (D.I. 45 at 8 (quoting *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983)).) The interpretation urged by Local 74 and adopted by the magistrate judge does exactly what is forbidden: it reads the agency shop clause—§ 10(e)—out of the contract entirely. Section 10(e) states in full:

> Agency Shop Clause. All employees covered by this agreement shall as a condition of continued employment, pay to the employee's exclusive collective bargaining representative an amount of money equal to that paid by other employees in the bargaining unit who are members of the Union, which shall be limited to an amount of money equal to the Union's regular and usual initiation or administration processing fees, and its regular and usual dates and assessments.

(CBA § 10(e).) The court agrees with Local 313 that the plain, unambiguous meaning of § 10(e)

6

requires Local 74 employees to pay Local 313 for its role as the exclusive bargaining representative, even though they are not "members" of Local 313. Indeed, this interpretation is the only one that gives effect to the language.

Both Local 74 and the magistrate judge appear to fault Local 313's interpretation as reading § 10(e) "in isolation of the remainder of the contract." (D.I. 49 at 3.) The court disagrees and finds just the opposite. The magistrate judge stated the following:

> [T]he Agency Shop Clause at § 10(e) is not rendered meaningless by the court's proffered construction because the provision continues to apply to any other employees covered by the terms of the CBA who are not subject to the carve-outs for members of Local 74 found at §§ 7 and 10.

(D.I. 45 at 12.) This conclusion cannot be correct in light of § 7(1), which states that all bargaining unit employees *must be members of Local 313 or Local 74* as a condition of employment.[2] (D.I. 29, Ex. B at 3.) There are no "other employees covered by the terms of the CBA," aside from those belonging to Local 313 or Local 74. Therefore, § 10(e) is specifically directed at Local 74 employees: it instructs them to pay Local 313 at the same rate as Local 313 employees.

The court disagrees with the magistrate judge's reading of §§ 7(1) and 10(a). While Local 74 and the magistrate judge may offer plausible readings of these provisions, there is no avoiding the fact that such an interpretation would gut § 10(e). In the court's view, § 7(1) simply

---

[2] Section 7(1), in relevant part:
> All present bargaining unit employees who are members of the Union on the effective date of this agreement or on the date of execution of this agreement, whichever is the later, *shall remain members of the Union in good standing as a condition of employment*. All bargaining unit employees who are not members of the Union and all such employees who are hired hereafter *shall become and remain members in good standing of the Union as a condition of employment* .... For the purpose of this provision, *membership in good standing in [Local 74]*, which shall also provide employees under this agreement, *shall be considered as compliance with this provision*.

(CBA, § 7(1).)

7

mandates membership in either Local 313 or Local 74. It does not speak to the remission of union dues. Section 10(a) instructs the employer as to the percentage of the employees' wages to be deducted for union dues. The percentages for Local 313 employees versus Local 74 employees are governed by the bylaws for the respective unions, but the application of Local 74's bylaws is limited to *that provision*. (CBA § 10(a) ("*For the purpose of this provision*, the Bylaws of [Local 74] shall apply . . . ." (emphasis added).) The court rejects the contention that this in-passing reference to Local 74's bylaws would supplant the clear mandate of § 10(e). Thus, the court's reading gives effect to each of the disputed provisions.

The court's interpretation of the CBA is also in accord with federal labor law. *See Sheet Metal Workers*, 949 F.2d at 1284. In particular, Congress and the judiciary have recognized the problem with "free riders"—"those who enjoy the benefits of the union's negotiating efforts without assuming a corresponding portion of the union's financial burden." *Buckley v. Am. Fed'n of Television & Radio Artists*, 496 F.2d 305, 311 (2d Cir. 1974). Agency shop provisions like § 10(e) are not disfavored and, as recognized by Local 74, are not unusual. (D.I. 38 at 4 (referring to § 10(e) as a "run-of-the-mill agency shop clause")); *see NLRB v. Gen. Motors Corp.*, 373 U.S. 734, 742 n.8 (1963) ("Congress intended not to illegalize the practice of obtaining support payments from nonunion members who would otherwise be 'free riders' . . . ."). The magistrate judge's recommendation—which contravenes an unambiguous agency shop clause— runs counter to federal labor policy. "A required tolerance of 'free riders' . . . would result not only in flagrant inequity, but might also eventually seriously undermine the union's ability to perform its bargaining function." *Buckley*, 496 F.2d at 311.

Local 74 argues that Local 313 "harps upon the magic language of 'exclusive representative' . . . but ignores Local 74's integration into the unit from the very

8

beginning. . . . [T]he status of an 'exclusive representative' has no significance to the interpretation of rights derived from the collective bargaining agreement at issue here." (D.I. 38 at 2.) Local 74 is mistaken. The very terms of the CBA identify Local 313 as the "exclusive bargaining representative for [the] bargaining unit employees." (CBA, § 1.) And as already stated multiple times, § 10(e) provided for payment to the exclusive bargaining representative. (*Id.* § 10(e).) Far from "harp[ing] upon magic language," Local 313 merely interprets the words of the CBA as they are written. (D.I. 38 at 2.) Local 74's attempt to introduce implicit or alternative understandings—not memorialized in the CBA—is inconsistent with "general rules of state contract law." *See Sheet Metal Workers*, 949 F.2d at 1284; *see also Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language.").

In support of her rejection of Local 313's interpretation, the magistrate posed a hypothetical in which Local 313's dues were assessed at a higher rate than Local 74. (D.I. 45 at 12–13.) Magistrate Judge Fallon reasoned that, in the hypothetical, a Local 74 member may be obligated to pay both unions' full rates: "Such a double payment cannot reasonably reflect the intent underlying the terms of the CBA." (*Id.* at 13.) The court is not convinced that the plain language of § 10(e) should be cast aside merely on the basis of a hypothetical that has not actually played out in reality. Moreover, as Local 313 underscores, membership in Local 74 is not mandatory. By paying Local 313 pursuant to § 10(e), employees satisfy the membership requirement outlined by § 7(1). *See Gen. Motors*, 373 U.S. at 742 ("[T]he burdens of membership upon which employment may be conditioned are expressly limited to the payment

9

of initiation fees and monthly dues. It is permissible to condition employment upon membership, but membership, insofar as it has significance to employment rights, may in turn be conditioned only upon payment of fees and dues. 'Membership' as a condition of employment is whittled down to its financial core."). Employment cannot be conditioned upon employees' membership in Local 74 because Local 74 was not the bargaining representative. *See Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 762–63 (1988) ("[Federal labor law] authorizes the exaction of only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.'" (quoting *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 448 (1984))). Thus, the hypothetical proffered by the magistrate judge does not change the court's interpretation of the CBA.

Finally, the magistrate judge found that Local 74 employees had not signed authorization cards giving Local 313 permission to retain any portion of their wages. To the extent that the magistrate judge used the written authorization cards to construe an ambiguity, the court has already explained that the language of the CBA is not ambiguous—therefore, reliance on extrinsic evidence was improper. (D.I. 45 at 13 ("The extrinsic evidence further supports Local 74's proposed construction of the CBA.")); *see Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999) ("Extrinsic evidence may *not* be used to create an ambiguity where none exists."). Moreover, the court sees no policy conflict with federal law. "It shall be unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value— (1) to any representative of any of his employees . . . ; or (2) to any labor organization . . . ." Labor Management Relations (Taft-Hartley) Act § 302(a) (codified at 29 U.S.C. § 186(a)). There is an

exception to this broad prohibition, however, where "the employer has received from each employee, on whose account such deductions are made, a written assignment." § 302(c)(4). As explained by Magistrate Judge Fallon, "it is undisputed that members of Local 74 authorized [the employer] in writing to make deductions for union dues from their paychecks." Thus, the court agrees with Local 313 that the deductions of employee dues was in compliance with federal law, and the CBA governed how the deductions were to be allocated. The language printed on the authorization cards or in the Local 74 bylaws cannot supersede the unambiguous language of the CBA. *See Skinner Engine Co.*, 188 F.3d at 146 ("Although extrinsic evidence is admissible to show that a written contract which looks clear is actually ambiguous, . . . there must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term. Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them." (quoting *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993))).

To be sure, the CBA is not a model of effective contract drafting. Nonetheless, the court is convinced that Local 313's interpretation is the only one that gives life to each of its provisions. Therefore, Local 313 did not violate the terms of the CBA. The court will grant Local 313's motion for summary judgment.[3]

## V. CONCLUSION

For the foregoing reasons, the court sustains Local 313's objections (D.I. 48) and rejects the magistrate judge's R&R. (D.I. 45.) The court grants Local 313's motion for summary judgment. (D.I. 36.) The court denies Local 74's motion for summary judgment. (D.I. 27.)

---

[3] The court declines to address Local 313's remaining argument that Local 74 failed to exhaust administrative remedies. (D.I. 48 at 9.) Moreover, having concluded that summary judgment for Local 313 is appropriate, the court finds it unnecessary to rule on Local 74's motion to strike (D.I. 41) and Local 313's cross-motion for leave to supplement the record. (D.I. 42.) The court will deny both motions as moot.

11

Dated: March 31, 2015

_____
UNITED STATES DISTRICT JUDGE